Mr. Cooper. Yes, good morning. Excuse me. I'm Judge Dyke, and Judge Bryson, Judge Moore. May it please the court. With the court's permission, I do have some exhibits that I think will assist the court. I'd walk it through some of the language of the, and my colleague, if you don't mind, will hand them up. They've been provided to counsel for the defendants. At issue in this appeal is the construction of two method claims in two different but related patents. The 014 patent is a continuation of the 220 patent, which itself is a continuation of the 799 patent, the parent of both of them. The claims at issue are for a method, this is quoting, a method of mailing parcels and envelopes using an automated shipping machine. The claim language specifically at issue is for step nine, the validation step, and that provides a materially identical language in both patents. Validating receipt of said parcel or envelope as the parcel or envelope for which said shipping label was printed. So I'm going to try and cut right to the heart of what I think is the argument. Am I understanding your argument to be that each step doesn't have to be performed by an automated shipping machine, in particular the two steps at issue here, and the court erred in concluding that it did? That is, Judge Moore, one of the steps, at least in three of the four independent claims in these two patents, one of the steps that permit an automated shipping machine to do it, the storage step. So yes, our argument is that the language of the preamble and the language of the validation step itself is agnostic on whether or not the automatic shipping machine must perform the validation step or whether it can be performed by a human attendant. And we would submit to the court that it's entirely implausible that the construction offered by the defendants and adopted by the court below, that only an automated shipping machine can perform the validation step, is entirely implausible, not just because— Do you agree that the words using an automated shipping machine that appear in the preamble are a limitation on the claim? Yes. Do you agree that at least something in this claim has to use an automated shipping machine? We completely agree that some of the steps must use an automated shipping machine. And in fact, we believe that it's clear from the language of some of those steps that the automated shipping machine must be used and is contemplated to be used. But the specification makes very clear that the first eight steps are performed by the automated shipping machine. The specification is just as clear, just as clear, Judge Moore, that at least with respect to one embodiment, the embodiment before the court today, the fourth embodiment, that the shipping machine cannot perform the validation or the storage step. Because in the handout I have before you, under tab two, a drawing of that machine is shown, and it has no storage capacity. There's no facility for storing a package, as the court can see. And there is therefore no inner sensors to detect and to therefore validate whether or not a package has been received by the machine for storage. Well, counsel, we're looking at claims. I mean, there's nothing in this claim that says, and this claim corresponds identically to figure 20. We're looking at claims. So you said what we're looking at is embodiment four. I'm sort of baffled. We're looking at claim language. Your Honor, the claims are to be interpreted in light of the entire specification of which they are required. What about the prosecution history? Are the claims to be interpreted in light of that, too? That, too, is an important source of information. It seems to me that the court below found quite significant the comment made on page 3197 of the record, which says, at each step. And at each step, that the step is performed by the automated shipping machine. Yes, that's right. At each step. I mean, clearly it can't be every step, because you've got the word attendance in some steps. But why wouldn't it be every step that isn't clearly to the contrary? Your Honor, let's focus on the prosecution history, if that has the court's attention focus. And I want you to turn, if you will, to the page behind tab 6. Could I clarify one thing? Yes. The amendment in which this storing step was changed so that it's performed by an attendant was an amendment made after the representation that Judge Moore is focusing on. That is true. That is true. And that amendment was to claim 72, independent method claim 72, which in the handout that you have before you, behind number 6, is indicated right there in red. What I want the court to focus on, however, is what the examiner said on the left-hand column of that page. The examiner said that inventions 1 and 2, in the second paragraph there, are related as process and apparatus for its practice. The inventions are distinct if it can be shown that either one, the process as claimed, can be practiced by blah, blah, blah, hand. And the examiner went on in the last sentence there in red. In this case, the process for mailing can be performed by hand. The process in its entirety. And in fact, Judge Moore, under the cited MPEP, Section 806.05e, that's the only authority the examiner had, was to say that the process in its entirety can be performed by hand. That was his objection. And you could have well responded by saying, well, this process in its entirety can't be performed by hand. Step one is limited to being performed by a computer. And you would have been fine. Maybe that would have traversed the restriction requirement and you would have been good and it wouldn't cause this problem. But instead, you chose to use the language that says each step is performed by an automated shipping machine. So why aren't you held to it? That was your choice. Your Honor, that's what that says. And I want the court to focus on the context of this. And let's look exactly what USIP replied. Applicant has elected with traverse because applicant disagrees with the examiner's suggestion that the process, I submit the process in its entirety, claimed in Independent Methods 1 and 72 can be performed by hand. And in fact, Your Honor, it claims 72, Judge Dyke, as you mentioned earlier. It clearly provided a step that required performance by a human attendant, the storage step. But I think what Judge Moore is asking, having made this representation that each step is to be performed by hand, and then having amended it to specify that one by machine, and having amended it to say that one step can be performed by hand, why doesn't that lead to the conclusion that the other steps are continued to be performed by the machine? I now see the confusion here, Judge Dyke. It wasn't amended to say it can be performed by hand. That's what Claim 72 said when the traverse was made. It said that from the beginning. It said storage had to be performed by hand. And the amendment was simply to break 72 out from 799 and make it a separate patent application, a continuation application. But Your Honor, I would submit to you that the language used by the applicant here was entirely consistent with the proposition that it was traversing the proposition that it could be performed entirely by hand. That's what they said in the red language beginning with the word applicant. How do I know that the claim at this time when this representation was made included an attendant step? The prosecution history, Your Honor, I believe reveals that. Yeah, but where? Oh. Counsel, just so you know, on the page directly before, we were talking about the 3197. And 3196, which is the page before, it's the same office action. It says Claim 72 before line storing, insert an attendant. So I think that might be why the court, we're having a little confusion. It looks like the attendant language was added to Claim 72 in this same response. I beg your pardon. I do stand corrected. Yeah. Let me refocus the court's attention then if I may on the language that's highlighted in red. Applicant submits that if the method were performed by hand, as the examiner suggests, then it would not use an automated shipping machine as set forth in preamble. The limitation was in the preamble. It made clear that the method uses the automated shipping machine. It did not say that it uses it in every step. Why isn't it properly construed to say that unless it says otherwise, it's performed by the machine automatically? Well, Your Honor, that codicil, if you will, on the preamble is just that. It's a codicil. The preamble doesn't say that. The preamble only is satisfied. But the prosecution history seems to say it's a problem. I beg your pardon? I say the problem is the prosecution history seems to say it. Your Honor, it's important to read the prosecution history in light of the specification that it is a part of and that it gives rise to and that it forms the backdrop for. The specification could not be clearer that embodiment number four cannot perform the storage step nor the validation step. It simply is incapable of it. And the construction being offered to the court by the defendants simply orphans that embodiment. Well, it's really the validation step that's at issue since the storage step, at least in one of the two claims, claim one's at issue here, does specifically call out the attendant. So that falls within, I think, Judge Dyke's exception for cases in which the claim language specifically alludes to human intervention. Yes, it does. But validation is really the key to your argument based on embodiment four, I think. So if you could hone right in on the language from embodiment four that you think leaves it unequivocal that that embodiment contemplates that the attendant will do not only just validation in general, but the precise type of validation, which is called out of the claim. Because your opposing counsel argue that, yeah, validation is used a little loosely. But if you look at the precise validation step that's at issue, that is not necessary under embodiment four to be performed by a human. I think that's a fair characterization of their argument. But if it's not, address it anyway if you would. Well, I think that is fair. But I do believe that the validation step that we're talking about is the validation step called in step nine. And that is the validation step. Walk me through why that's true. Because I think it's a pretty important point on what we are to draw from embodiment number four. Thank you, Your Honor. And let me do walk you through. It begins with the abstract of specification in all three of these patents. And the abstract is set forward in excerpt in the first handout. A system for accepting and storing items for subsequent pickup by a commercial carrier. The system includes safeguards which prevent unauthorized access to the storage area and will not provide a receipt to the customer until internal sensors verify deposit of the item. And then the red language, Your Honor, this is embodiment four. The abstract is signaling.  Instead, the item is given to a human attendant, such as a checkout clerk, hardware store, or the like, with the appropriate mailing label for validation of receipt of the item by the attendant. Your Honor, embodiment four, and I pointed out earlier, the figure that shows no storage area, no internal sensors to perform any validation of any kind is embodiment four. If you then go to tab number three, Judge Bryson, this is the key language for embodiment four. The specification is clear on what is contemplated by embodiment four. Figures 20, that was the drawing, through 22 illustrate a standalone automated shipping machine system, shipping system, constructed in accordance with a fourth embodiment of the invention. It goes on. It may be that, you may be right, but the argument is based, I think, ultimately, the argument of your opposing counsel is based on the notion that there's a difference between just this general use of the term validate versus the claim language, which focuses on validation, validating receipt of the envelope or parcel as the envelope or parcel for which the label was printed. Yes. The distinction that, if valid, then takes care of the problem of the language that's used in the embodiment and the language used earlier in the past. Well, it takes care of it in the sense that this embodiment is read out of these patents. Well, not necessarily. You could have this. The idea, I think, underlying this reading of embodiment four is that, yes, the attendant receives the package, but there still is another function that's doing, which is determining that this is the same package for which the label was prepared, which has to be done automatically, even under embodiment four, because that's validation that it's the same package, which is different, hypothetically, arguably, from the receipt validation. Arguably. Arguably, Judge Bryson, but the specification also refutes that distinction. Okay. Before I get to it, it's the next tab. Before I get to that, I do want to still highlight the last, excuse me, sentence of tab three. Obviously, this system is substantially simplified from the embodiments described above, the first three embodiments, since the storage and validation process is performed by an attendant. And you say validation process is absolutely all the validating that gets done, including the validating referred to in the claim. Yes, Your Honor. I understand. I do, and I want to show you where the specification makes that clear. Sure. That's behind tab five. This is an excerpt from the specification describing the third embodiment. Not the fourth, but the third embodiment. I have highlighted in red particularly important language. The language that is important to the defendants opens this passage. At this point, a very important validation step is performed. In particular, the system determines at step 536 whether it has received the correct package. This step is critical since it verifies that the customer did not perform a package switch or forget to replace the package in the intermediate storage area for shipment or forget to replace the package. Here's the important thing. Such validation, that validation, such validation may be accomplished in several different ways in accordance with this invention. For example, in a simple embodiment, photocell sensor may simply detect whether any package has been placed on the conveyor belt. If so, it is presumed that the package on the conveyor belt is the appropriate package, the correct package, with the appropriate label. Embodiment three, the simple embodiment, and then it goes on to talk about the preferred embodiment, which has sensors and can... No, I understand. Okay. But neither one of these, none of these examples given in the passage you're referring to talks about a human attendant doing the validation. No, that's in embodiment four. My point is that even with the automatic shipping machine, the simple embodiment described here in the third embodiment doesn't, it doesn't do nearly as well a job as a human attendant does at validating this correct package. It simply says, is there a package in there? It has a photocell. It's true that it does an imperfect job, but the question still remains on the table. And I understand your argument, but the question remains on the table as to whether what the clerk is doing in the fourth embodiment is equivalent to or is in addition to something that's done by the machine that fits within the terms of the validation described in the claim. And my point is this. The specification, I submit to you, makes clear that it is. Okay. That it does. And just think about the results if I'm wrong, and if they're right. Think about the results for this patent, these two patents. This embodiment, embodiment four, which was the sole purpose of these patents, was to claim that embodiment in figure 20 and the method using that machine in these, that was its sole purpose. How do we know that? Your Honor, I would submit it to you. That's very interesting. I'm going to submit it to you. But where in the prosecution history does it suggest that that was the purpose of these claims was to capture that embodiment? Your Honor, I submit to you that you can't, it's very difficult to read the language of 799, the parent patent, which deals with all the embodiments using inner sensors in which the machine itself validates. And the language and structure of these patents, and the fact that claim 72 was broken out and became 220, not to grasp that the purpose of 220 and then 014 was to claim this embodiment. But consider, again, and I know my time is up. I think we're about out of time, but we'll give you three minutes for rebuttal back. Okay? Thank you. Mr. Ruddy, is that all right? Yes. Thank you, Your Honor. May it please the Court, the intrinsic record and significantly the prosecution history here unambiguously confirms the applicants consider the preamble as a claim limitation and thereby intended use of the automated shipping machine for each claim step unless the step explicitly stated otherwise. The applicants unambiguously represented to the patent office and the entire world that each step of the method is performed by the automated shipping machine. This is in the record. Do you think this whole case hinges on their response in that remark section to the restriction requirement? No, Your Honor. I think we're relying that it's consistent with the entire intrinsic record. But that certainly is the last part. The prosecution history happens after the specification is written. But if that statement isn't in the record, why do you prevail? Do you think there should be a presumption that when the preamble says using an automated shipping that every step then has to use it? Well, no. Well, first it is in the preamble. I'd like to answer my question. It is in the preamble. Right. Do you think there should be a presumption that when the preamble uses words like that, using an automated shipping, that every single step has to use it? No, I don't think there should be a presumption, a blanket presumption. But I think in this case, you look at the steps, and it makes clear that there is a required use. And there's a distinction here between being performed by the automated shipping machine. There's a presumption unless the claim says human attendant? Well, that's why the timing is so important, we think, of that prosecution history amendment. No, but I think what Judge Moore was asking, let's take the claims on the face without the benefit of the prosecution history. Should we read a claim which has a preamble like this to require that each step is performed by the automated shipping machine unless the step says otherwise? Well, the distinction being not performed using the automated shipping machine. And so we're not excluding a customer use of the machine in performance of the steps. But we're saying that there is a use, but there's not a blanket presumption, no. But I think in view of the specification, and clearly in view of the prosecution history, when they make a distinction that there's the entire process, each step is performed by the automated shipping machine. Where does the specification say that, though? I understand the prosecution history, but you're telling me the prosecution history just further supports everything else. And that was my whole question to you was, you know, you may believe that the specification does, but you seem adamant on arguing that it could do it all, and so I think I'd like you to prove to me it can do it all. Sure, and there is, Judge Bryson I think made this point, and it's in our briefs, the distinction between just validating or validating receipt, which is described in the fourth embodiment, where an attendant performs those steps, versus the full context of the claim language, which recites validating receipt of the parcel or envelope as the package, I'm sorry, validating receipt of said parcel envelope as the parcel or envelope for which the shipping label was printed. And we submit that it is the critical and very important function in the third embodiment that's performed by the automated shipping machine, that it requires use of the automated shipping machine. But how does it require use? Your argument in response to mine and Judge Dyke's questions is no, saying using an automated shipping machine in the preamble does not create a presumption that the step uses it. In this case, the specification discloses use of a computer, but it doesn't say that's the exclusive way of doing it. So why should I take an example of the specification which has a computer performing that step and say, aha, this means the computer must always perform the step in the claim. Well, I think the specification, the point is the fourth embodiment, it never explains exactly what the attendant is doing. It says vaguely validating. I'm not answering my question at all. I'm sorry, maybe I misunderstood your question. My question is, if the preamble doesn't create a presumption that every limitation has to do this, show me where in the specification it says must be done by the computer. Because if the step itself just says validating and there's no presumption it has to use a machine, I mean, clearly you agree validating can, apart from the specification, can be done by a human being, correct? Yeah, validating by itself, but not the validating that's free. It certainly can be. Even the validating requirement can be. Yes, I certainly agree. Unless the specification says, no, it has to be done by the machine. I want to see where that limit is in the specification that you want me to use to construe the claim this way. No, I agree. It's not in there, but the point being the validation that's described in the fourth embodiment never explains exactly what the attendant is doing. The most we have, and this is in the specification, this is in the record at JA 132. This is in column 25 of the 220 patent. For example, it explains that the, starting at line 40, the attendant then stands in initials receipt to validate shipment and receipt of the partial or envelope from the customer. That's the full extent of what we get, I submit, of what the attendant is doing there. There's no explanation as to whether or not the attendant is ever making sure that it's the correct package. And again, one of the critical and important features of the full validating step is that it is designed to prevent a package switch from occurring. We submit that in the fourth embodiment, the attendant performed validation. It occurs at a completely separate location. You take your package and take it somewhere else, and the attendant has never seen the package before and has no interaction with the shipping label. But the other point is the specification makes clear. Can I ask you a question? Sure. This specification supported a number of different patents other than the two that are before us here. In those other patents that are not before us, was there a step in the patent that referred to receipt alone without receipt that involves validation? No, I don't believe so, Your Honor. I believe that the validation step is consistently recited as it appears here in the 220 claim. Validating receipt of said parcel envelope as the parcel envelope for which the shipping label was printed. Well, doesn't that suggest that the use of the word receipt in the specification is just shorthand for the validation step here? I think by itself it could, Your Honor, but the point being they told the patent office that each step is performed and at the same time. Yeah, but then you're going to the prosecution history for that. Exactly. It does seem to me that the use of the term validation and validates creates a difficulty for your argument with regard to embodiment four. And the language that caught my eye is really not the language you were quoting, but the language earlier on column 25. The retail clerk who validates receipt of the package and provides an appropriate receipt to the customer. Now, that sounds like it could reasonably be interpreted to mean validates receipt of the particular package, which was the subject of the whole shipping enterprise. Don't you think that's a reasonable reading of that language? I think it is one reading, but it's – Well, but isn't it the most reasonable reading, really? Well, I mean, without the prosecution history, it is one reading, and I submit it is reasonable, but they don't – especially because it never goes any further than that. But the point I want to – and I see that I'm into my colleague's time. I want to make one point, though, about the prosecution history. The cases we cite in our brief, the Springs Windows fashion, the Hawkerson case, as well as the Johnson & Johnson associate case, explains that the burden is on the patentee to clarify these remarks. When they go to the patent office and say each step is performed by the automated shipping machine, the law pushes the burden on them to correct and clarify that, and I will yield. Mr. DeMaurais, am I pronouncing that correctly? That's one way to pronounce it, Your Honor, if you have a French background. That's not the way you pronounce it. We say DeMaurais, but DeMaurais is actually French, so you are right. Thank you, Your Honor. May it please the Court, John DeMaurais for IBM. I'd like to go back to Judge Moore's question about the plain language because I do think the plain language here, when you read these claims, supports our position. The way that the claim is drafted, and there's a couple pieces to this, but the way the claim is drafted, it says a method for mailing of parcels and envelopes using an automated shipping machine. When you start a claim that way, it implies that the following steps are going to use the machine, not exclusively because it provides for customer interaction with the machine, but it's either the machine doing it or a customer using the machine doing it. Contrary to the other guy who's supposedly on the same side as you, you think there is a presumption. And there's a couple reasons for that. I do believe if you're going to put in a preamble that you are using a machine to do the following steps, that there is a plain language reading of that, that strongly implies that the steps are going to be either the machine or a customer using the machine. But there are more reasons for that in this particular case. Unless it says otherwise. That's where I was going next, Your Honor. The last element here, when you look at what the applicant did, the applicant amended… Does it have to say otherwise in the claim itself? Excuse me? Does it have to say otherwise in the claim itself? I think there needs to be something about the language of the claim that indicates otherwise. So here we have exactly that. We have actually two things that I'd like to mention. Method of baking a cake using a fireplace. Start, number one, by mixing the ingredients together. Number two, putting the ingredients in the pan. Number three, sticking them over the fireplace. Your Honor gave a perfect example of where the language of the claim itself makes it clear that it's not using the machine. So I would say in that… Why can't the fireplace do the mixing, Mr. DeMeyer? So only if it's totally impossible for the fireplace to do it? No, no, I think… What if it's ambiguous? What if it's not a fireplace using a convection oven to do this? I think that what we're doing here is looking at the plain language and the structure of the claim that we have in this case. And in this case, when you're looking at an introductory language that says a method for mailing using the machine, and you read the steps, and the steps are clearly things the machine is doing, and then you have a step that says here an attendant or a customer could do it, a plain reading of that, of the Englishes, the ones that come before the machine, and where the applicant intended one not to be the machine, they told you it could be an attendant or a customer. So it's the whole package here. I'm not saying there should be a presumption in all circumstances. It depends on what the language is that we're dealing with. But I think there's something else here that's actually really compelling about just if we're looking at the claim language. And this really didn't come out on the brief, so it's an important point. When you look at the companion claims in both of these patents, in the 220 and in the 014, there's an independent method claim and an independent apparatus claim. And the language tracks identically. They're mirror image claims. And if you look at the claim three now on the 220, which is what I'm looking at, and you drop down to the last element, so this is on the appendix JA-134, it says actually a means for validating receipt of said parcel or envelope as the parcel or envelope for which the shipping label was printed by said printing means, whereby a validated parcel or envelope is taken by an attendant for storage. So if you look at that companion apparatus claim, which is a mirror image of the method claim, it shows you exactly what they were intending to claim. They were claiming a validation means later an attendant stores the package. That tracks identically to the method claim. So when counsel for USHIP says our interpretation would not cover embodiment four, our interpretation is entirely consistent with the companion apparatus claim. And when you look at what happened here, it's clear that's what the applicant's intent was. Because when the examiner issued the restriction requirement and said the method claim and the apparatus claim need to be restricted, the applicant said no, the method claim needs to use the machine. And then the applicant then added that language that an attendant or a customer can do the storing, tracking the apparatus claim identically. So your argument then is that because the apparatus claim asserts a machine comprising, and one of the required elements of the machine is the means for validating that it can't be human. In that particular means, the means for validating, it is a – there would have to be some machine doing some validation, which is contrary to what USHIP's argument is. And it's the machine called out in the preempt. Exactly. So taking – so getting back to Judge Moore's question. So just on the plain reading of the claims, before we get to the specification, before we get to the prosecution history, the plain reading of the claims would clearly drive you to the conclusion that the method steps are done by the machine, except where they tell you not. And that's consistent with the plain language and with the companion apparatus claims. Then you go to the specification and you pick up on your honor's point, where we have to look in the specification for things that are validating the receipt of the package as being the package for which the printing label was made. And the only thing that does that expressly in the specification is the machine. The attendant embodiment for doesn't do that at all. I'm going to ask a totally dumb case. Can a person never be a means? I don't believe in the – For validating. Why can't a person be a means? I'm trying to – I'm racking my brain as I sit here. I think about the 112, a structure. Well, I'm a structure, maybe. I was going to say that in an apparatus claim you are claiming a thing, and that a means has got to have disclosed structure, and we think of structure in the terms of things. Can you think of any clear statutory or case law that says a person can't be a means? I told you it was a dumb question. I looked. You can say no and it's okay. No, I looked and I couldn't find any. I did look and I couldn't find any. The problem isn't so much is it – well, you can correct me if I'm wrong. It's whether a person would be a means. Suppose a person could be a means. That would be fine. But the problem with – or the point I thought you were making with respect to Claim 3 is it starts off saying an automated chipping machine comprising machines, and the one thing that's clear is that a person isn't part of the machine. Fair point. I like your point better. But then there's another notion that I'd like to attack, which hasn't really been fleshed out yet today, which is USHIP's argument that there's a problem that these claims don't cover Embodiment 4. In this case, that makes no sense because, firstly, you look at these apparatus claims, Claim 3 in the 220 and Claim 2 in the 014, and they're both drafted the way we just discussed, which is there's a validating means, and then a tenant goes to store. So those claims wouldn't cover Embodiment 4 either, clearly showing the applicant had an intent that individual claims wouldn't cover all embodiments. The second point, which is critical on this notion, there are four embodiments in this patent. You don't hear USHIP saying that their construction of these method claims cover Embodiments 1 or 2 because they don't. If you read Embodiments 1 and 2, Number 1 doesn't print the address on the printing label, which is a claim element. Embodiment 1 doesn't calculate a delivery date, which is a claim element. Embodiment 1 doesn't do any validation. Then you go to Embodiment 2, it adds printing the address on the mailing label, but it doesn't calculate a delivery date, and it doesn't do any validation. So Embodiments 1 and 2 are not covered by these claims either, and USHIP doesn't argue contrary to that. And the third point about whether these claims have to cover all embodiments is there are at least six issued patents on this same specification. There are dozens and dozens of claims off of this specification, and there's even a pending application right now on this specification, which the government points out in their brief. It would be nonsensical to conclude that every claim off of this specification has to cover every embodiment. It doesn't make any sense. If they're among all of those patents and all of those claims, is there any claim that unambiguously, in your view, would cover Embodiment 4? There are claims in the original application that don't get down to the validation step at all. In the original 70-some-odd claim, this is Claim 72. In the previous 70, I think there are some that don't have validation in them at all, and I can check that. I guess what I'm looking for is if there is anything that makes clear that the validation, which is part of the description of Embodiment 4, is performable by a human. I've not seen that, but there's a pending application right now at the Patent Office where I haven't seen the claims because they're not public yet. But it gets back to the notion that these claims don't need to cover Embodiment 4, and it's clear that the applicant wasn't trying to get them to cover Embodiment 4. I know counsel said that Embodiment 4 was the whole reason for these claims, but if you just look at Claim 3 in the 220 and Claim 2 in the 014, they clearly say it's a validation means and the attendance-only story, which wouldn't be. Now, what did you say was missing again from Embodiment 1? Embodiment 1 is missing at least three things. One is it prints an address label that you stick on the package, but it doesn't print the address on the label. If you read the embodiment, the user, the customer, doesn't actually type the address into that embodiment, so the computer doesn't have the address. It just prints a label, and then the customer handwrites the address, and that's actually described in the embodiment. They don't calculate a delivery date, which for the first time in Embodiment 3, they explain how you calculate a delivery date. Presumably, all those things could be done by an attendant and still be within the scope of Embodiment 1, and therefore, you could read the claim to read on. If the claim is reading on Embodiment 1, it would be possible for the claim to be satisfied without having to have any of those particular functions performed by the machine, correct? Actually, no, Your Honor, because the parties agreed below that the claim construction of the first eight steps were automated by the machine. I understand that this goes to the question of whether it's correct to say that the specification makes clear that the first eight steps are all performed by the machine. If that's not true, then that, it seems to me, changes the way we look at Claim 1, because Claim 1, then, is much, much broader. Do you understand what I'm saying? I'm not sure I follow you. In Embodiment 3, it's the first time they describe how the machine addresses the label, and the first time they describe how the machine calculates the delivery date. Those things aren't even discussed in Embodiment 1. The delivery date calculation is not even discussed. How to validate and whether validation is easy in the concept is not discussed in Embodiment 1, and there's no printing the address on the label. Not to beat the dead horse here, and it may be pretty close to dead, but Mr. Cooper started off early in his argument that it's clear that this claim, the first eight steps, the specification makes clear those steps all have to be performed by a machine. What you're telling me about Embodiment 1 sounds like the specification would allow some of those steps not to be performed by a machine. I'm not sure I would have said that. What I said is in Embodiment 1, they don't even discuss that happening. It's not that they don't discuss it happening by the machine. It's not happening at all. They don't calculate delivery date at all in Embodiment 1. It's not part of the concept, and they don't discuss validating at all in Embodiment 1. It's not a description of the machine, which Claim 1 arguably reads on. It's neither a description of the machine or of an attendant doing that function. The only thing where that happens, where Your Honor's point might make sense, is in Embodiment 2, excuse me, in Embodiment 1, they do say that the customer writes the address on the label, but they don't describe at all how to calculate a delivery date, and they don't even discuss the concept of validation. And then in Embodiment 2, where they print the address on the printing label, again, they don't discuss calculating the delivery date at all or validation at all. That doesn't happen until Embodiment 3, where they describe how the machine does it. So I think the notion that these claims were intended to cover all embodiments makes absolutely no sense when you look at the actual claim structure and how the embodiments work. And then when you go to the prosecution, I think we're out. Oh, am I done? I'm sorry. Yes, thank you. Thank you. Mr. Cooper, you have three minutes. Thank you very much, Judge Dyke, for the extra time. I want to go straight to my friend's point that Claim 3, the apparatus claim in 220 kind of refutes my argument that Embodiment 4 was intended to be covered by these claims and these patents. He would be right if, in fact, means for validating receipt must be a machine. If that is true as a matter of law, then Embodiment 4 is orphaned. It's orphaned in these patents and it's orphaned in all of the family of patents. We haven't been able to find a case that says that either. The cases that seem to kind of edge up to that idea were all subsequent to the time when this patent was filed. But what do you think the means for validating receipt would be if it's not part of the automated shipping machine? It has to be the human attendant, Your Honor. The human attendant in Embodiment 4. The preamble says an automated shipping machine for use in mailing parcels and envelopes comprising a human is not part of what comprises the machine. Well, neither is storage, Your Honor, but storage is storage. In other words, I think we can agree that when you have a machine comprising A, B, and C, C has to be a means performed by the machine, not a means performed by a human, right? Well, no, Your Honor. I don't agree that that's the case. As counsel admitted, there's no law to that effect. And, Your Honor, here's the point, the key point, and the reason I think this proves my point rather than his. The only embodiments in these patents or in the parent patent, Embodiments 1, 2, 3, and 4, these claims referencing customer, excuse me, attendant storage, do not read on any embodiment. These claims then become orphaned under the interpretation that validation must be performed by a machine because the Embodiment 1 talks, counsel is wrong with respect to, What about Embodiment 3, which shows the validation step being performed only by a machine? Embodiment 3, Your Honor, yes. That shows validation with sensors, but so does Embodiment 2, and so does Embodiment 1. They also show, and integral to that validation is storage. So every one of those embodiments both validate and stores. The interpretation before you is that these claims require machine validation and attendant storage. So none of those embodiments are within these claims with the exception of the method claim in 014, which is agnostic and which would presumably cover that. But these three independent claims, there is no embodiment on which the interpretation before you reads on. Okay, thank you, Mr. Cooper. Thank you. The case is submitted.